UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 98-4037

MARK DAVIS, a/k/a Mark Coleman,
a/k/a Mark V. Johnson, a/k/a
Wakim, a/k/a Y-Kim,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Solomon Blatt, Jr., Senior District Judge.
(CR-96-325)

Submitted: June 11, 1999

Decided: September 3, 1999

Before WIDENER, NIEMEYER, and KING, Circuit Judges.

_____

Affirmed in part and remanded with instructions by unpublished per
curiam opinion.

_____

COUNSEL

Mark Davis, Appellant Pro Se. Cameron Glenn Chandler, Assistant
United States Attorney, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Defendant Mark Davis, a/k/a Mark Coleman, a/k/a Mark Johnson, a/k/a Wakim, a/k/a Y-Kim, entered a plea of guilty, along with several codefendants, to conspiracy to possess with intent to distribute and conspiracy to distribute cocaine base and heroin in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. Davis also pleaded guilty to one count of money laundering in violation of 18 U.S.C. § 1956. Davis's appeal was initially consolidated with the appeals of codefendants in the lead case of United States v. Feurtado, 97-4008. Subsequently, Davis moved this court for permission to discharge his court-appointed attorney and for the appointment of another attorney and for permission to file a supplemental pro se brief. This court granted the motion to discharge his attorney but denied the motion for appointment of a substitute attorney. We granted his motion to file his supplemental pro se brief. Davis's appeal was deconsolidated and severed from the appeals of his codefendants and this court granted the government's motion to submit Davis's appeal on the briefs.**1** Davis also filed a motion on May 3, 1999, asking this court for an order clarifying and allowing him to join the legal issues and arguments raised by Arguments I and IV in United States v. Feurtado, No. 97-4008, in addition to the issues raised in his supplemental pro se brief. This motion is granted.**2**

The first argument made by Davis in his pro se brief is that the district court abused its discretion when it granted the government's motion, filed April 13, 1996, to dismiss the indictment without prejudice. Somehow he claims that his speedy trial rights were violated.

_____

**1** The other defendants are the subject of a decision of even date. United States v. Feurtado, No. 97-4008 (L), ___ F.3d ___, (4th Cir. 1999).
**2** Any outstanding motions not mentioned specifically in this opinion are denied.

2

We are unable to ascertain any violation of his speedy trial rights by the dismissal of the initial indictment without prejudice. Another argument made, apparently, is that under Fed. R. Crim. P. 48(a) when the government files a dismissal of an indictment the prosecution is terminated, thus his prosecution should be terminated. The government did not file a dismissal of an indictment, rather it asked for a dismissal without prejudice. That motion did not refer to the McNair testimony mentioned in Feurtado, No. 97-4008 (L), ___ F.3d ___, so any claim in this respect is without merit.

Davis's second claim in his pro se brief, as best we can tell, is that by entering an order of June 10, 1996 (finding no willful prosecutorial misconduct) nunc pro tunc to March 27, 1996, the court somehow improperly changed its earlier findings of fact and thereby erred in dismissing the indictment without prejudice rather than with prejudice. Davis points to the court's oral statement on March 27, 1996 that the court had "grave doubts" that testimony before the grand jury regarding allegations of murder against one or more of the codefendants did not influence the return of indictments on the drug charges, but its order of June 10, 1996 stated:

> While the court does not find that the defendants have established that the improper testimony substantially influenced the grand jury's decision to indict, the Court has some doubt that the grand jury decision to indict was not free from the influence of that testimony.

As to Davis's claim that the district court's June 10, 1996, written order regarding this testimony causes the record to be incorrect as to the previous findings of March 27, 1996, we note that a court speaks through its judgments and orders not by opinions or by chance observations. E.g., Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina, 741 F.2d 41, 44 (4th Cir. 1984).

With respect to the merits of any claim of Davis under Part I of Feurtado, No. 97-4008, that the district court erred in dismissing the indictment without prejudice, rather than with prejudice, such claim is foreclosed by our decision in United States v. Feurtado, No. 97-4008 (L), ____ F.3d ____ (4th Cir. 1999).

3

The next argument raised in Part IV, <u>United States v. Feurtado</u>, No. 97-4008, in which Davis joins, is that the district court's addition of the statutory five-year period of supervised release to the sentence agreed upon in his plea agreement violates Fed. R. Crim. P. 11(e)(3) and (4). The government has conceded this issue as to Davis, and for the reasons stated in <u>Feurtado</u>, we remand this issue to the district court for reconsideration. Upon remand, the district court may accept the plea agreement and resentence Davis so that the sentence of imprisonment plus the statutory five-year period of supervised release does not exceed the term of imprisonment stated in the plea agreement, or in the alternative, the district court may reject the plea agreement and allow the defendant to withdraw his guilty plea and plead again.

Davis next claims in his <u>pro se</u> brief that he is entitled to dismissal of the indictment filed October 17, 1995 because he was not indicted within 30 days of his arrest on September 14, 1995 as provided in the Speedy Trial Act, 18 U.S.C. § 3161(b). This claim is without merit. On motion of the government, the district court granted a continuance for the filing of the indictment until the next session of Grand Jury #3 which was to begin on October 17, 1995. The district court found that the ends of justice would be served by the granting of such continuance and that the ends of justice would outweigh the best interest of the public and the defendants in a speedy trial. This finding was based on the fact that the requested continuance was for only nine days beyond the expiration of the 30 day period in which the indictment would otherwise be required for codefendant Susan Pena [arrested on September 8, 1995, six days before Davis]. The court also found that the government's request was not for any improper purpose or to cause undue delay, but rather because of certain events such as some witnesses in the case had already testified before that same Grand Jury #3 and because there were multiple codefendants, some of whom had been arrested and were awaiting transfer to the jurisdiction and some of whom were still fugitives.

The district court stated sufficient reasons supported by the record to support its finding that the ends of justice would be served which outweigh the interest of the public and the defendant in a speedy trial. The three day period of delay which Davis now asserts violates

4

§ 3161(b) is properly excludable under § 3161(h)(8)(A) and (B)(iii), and we affirm the district court on this issue.

Davis next raises a sentencing issue, claiming that the district court clearly erred in attributing to him 40 kilograms of cocaine as stated in the presentence report. Davis objected to the amount of cocaine attributed to him in the presentence report on the grounds of insufficient evidence. He attacks specifically a portion of the report which states he was present at the Los Angeles airport on February 1, 1995 when two suitcases containing 20 kilograms of cocaine were given to Kevin Barrett and Garry Feurtado to transport to South Carolina, following which Barrett and Feurtado were arrested. The burden rests on the defendant to show the inaccuracy or unreliability of the presentence report. United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990).

In his challenge to the presentence report Davis attacks the credibility of the cooperating codefendants' grand jury testimony and statements to McNair. At the conclusion of the sentencing hearing, the district court found that the preponderance of the evidence supported that 40 kilograms was an amount of cocaine for which Davis, with his position and role in the organization, should be held accountable. With respect to Davis's objection to the statement in the presentence report that he was actually at the Los Angeles Airport, the district court correctly found that it did not matter whether Davis was or was not actually or physically at the airport when Barrett and Feurtado left with that 20 kilograms of drugs. The court found, and we agree, that the preponderance of the evidence supports that Davis was a member of the conspiracy, that Davis was in California when that particular cocaine left California headed for South Carolina, and that Davis knew all about it. The preponderance of evidence also supports that Davis used his residence as a stash house for the organization and on at least one occasion there was at least 10 kilograms of cocaine stashed at his residence, that one of his roles in the organization was to transport cocaine from Los Angeles and that codefendant Pena transported him in the Los Angeles area on at least two separate occasions for the purpose of transporting at least 10 kilograms of cocaine each time, that he made a trip with Barrett on at least two occasions carrying a minimum of 10 kilograms of cocaine each time. The district court's finding that 40 kilograms of cocaine are attribut-

5

able to Davis based on his role in the conspiracy and the amounts of drugs foreseeable to him is not clearly erroneous and we affirm the district court on this issue.

Finally, Davis claims that the district court erred in denying his motion to dismiss the indictments against him because of "egregious manipulation of the grand jury." In addition to the drug conspiracy and money laundering, Davis was indicted for attempting to escape from federal custody in violation of 18 U.S.C. § 751(a) while incarcerated for the drug conspiracy charges. Davis's claim of egregious conduct appears to be that the government was unable to produce sufficient evidence of the drug conspiracy charges and so it presented the allegation of attempted escape for the purpose of obtaining an indictment for the conspiracy and drug charges and to bolster its overall case against him for trial.

We agree with the district court that the charge of, and evidence of, Davis's attempted escape did not influence the grand jury to indict on the drug conspiracy and money laundering counts. The district court found, and the record supports, that there was ample evidence to support the return of the indictment on those counts. Absent any evidence to support the claim, it is frivolous, even if permissible, which is doubtful, to argue that the grand jury would not have returned an indictment on those counts in the absence of the evidence of his attempted escape. Stretching the case as far as we can for Davis, he has failed to establish actual prejudice so that he would be entitled to dismissal of the indictment under Bank of Nova Scotia v. United States, 587 U.S. 250 (1988), and we affirm the district court on this issue.

In summary, we affirm the district court on all issues raised by Davis with the exception of the claim that the addition of the mandatory five-year period of supervised release violates the terms of his plea agreement. As to that issue, we remand for resentencing so that the sentence of imprisonment and period of supervised release does not exceed the sentence stated in the plea agreement, or for rejection of the plea agreement by the district court at its option, leaving Davis free to withdraw his plea and plead again.

AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS

6